UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

D-03 JAMES GEBARA, ET AL.,

    Defendants.
_____/

Case No. 06-20465

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING DEFENDANT JAMES GEBARA'S MOTION TO SUPPRESS FRUITS OF ELECTRONIC SURVEILLANCE [1081] AND JOINDERS**

Defendant James Gebara (D-03) is charged in multiple counts of a Fifty-Count Second Superseding Indictment. At a hearing held on February 24, 2010, this matter came before the Court on Defendant's motion to suppress the fruits of electronic surveillance derived from the following four Orders issued under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520:

1. October 7, 2005 order signed by Judge Battani;

2. December 8, 2006 extension order signed by Judge Hood;

3. March 2, 2006 extension order signed by Judge Hood; and

4. April 5, 2006 extension order signed by Judge Hood.

Each Order was predicated on an affidavit prepared by Special Agent Edward Brzezinski. Defendant Gebara argues that the wire communications intercepted pursuant to the initial wiretap Order were "unlawful" within the meaning of 18 U.S.C. § 2518(10)(a)(i) because, contrary to the requirements in § 2518(10)(a)(ii), the supporting application and affidavit

was insufficient to show, as set out in 18 U.S.C. § 2518(c), that (1) normal investigative procedures had been tried and failed, or (2) why they reasonably appeared to be unlikely to succeed if tried, or (3) why they reasonably appeared to be too dangerous. As to the three extensions of this initial wiretap order, Defendant Gebara further argues that, contrary to the requirements in 18 U.S.C. § 2518(1)(f), the Government failed to "set[] forth the results thus far obtained from the interception, or a reasonable explanation of the failure to obtain such results." Defendant Gebara argues that the government is required to demonstrate the "necessity" for the wiretaps and failed to do so.

The government responds that (1) Defendant mischaracterizes the standard set forth in the relevant statute and fails to cite a single Sixth Circuit case on the issue despite the fact that the case law is well developed in this Circuit; and (2) the statutory requirements for the initial wiretap order and all extensions were satisfied.

For the reasons stated below, Defendant's motion to suppress is DENIED.

## I. Facts

### A. Origins of Investigation

An investigation into the Highwaymen Motorcycle Club began in 2004 with the arrests of several low level dealers who agreed to cooperate with the government. At the same time, two confidential informants ("CIs") came to the attention of the FBI.

One CI was William Smith. Smith was a long time, "old school" member of several different motorcycle clubs and owned the Copa Lounge; a local bar patronized by different clubs at various times. Smith became an informant for the ATF and provided an extensive history of the clubs in the Detroit area. Smith allowed the FBI and the ATF to "wire" his bar. Numerous conversations about gun and drug deals were taped. Smith dealt primarily with

the Outlaws Motorcycle Club, but his friendships extended to members of other clubs as well. Smith provided information on various members of these clubs and participated in controlled purchases of narcotics and firearms.

The other CI was Doug Burnett. Shortly after Smith became a CI, Doug Burnett voluntarily approached the FBI with information on the Highwaymen Motorcycle Club. Burnett had associated with the Highwaymen for years, had recently become a member, and was concerned about the violent acts committed by members of the Highwaymen. Burnett agreed to work with the FBI, including wearing a "wire," purchasing narcotics, and providing information. He ultimately had to be relocated due to threats by the Highwaymen.

**B. Title III Wiretap of Aref Nagi Telephone Number 313.220.2500**

Interception of telephone number 313.220.2500, used by Highwaymen member Aref Nagi, began on October 7, 2005 and continued until May 5, 2006.

The initial wiretap order was signed on October 7, 2005 by Judge Battani. It named the following individuals as principals: Aref Nagi, Johnnie Jarrell, Robert Burton, Gary Ball, Joseph Whiting, and Philip McDonald.

The first extension order was signed on December 8, 2005 by Judge Hood. It added the following individuals as principals: Hatim Atallah, Nicholas Jackson, Aaron Roberts, Michael Watson, and Roy Baca.

The second extension order was signed on March 2, 2006 by Judge Hood. It added the following individuals as principals: Eric Manners and Avelino Ventura. It also added the following telephone numbers: 248.918.5577, subscribed to by James Johnson and used by Aref Nagi; and 313.995.2251, subscribed to and used by Aref Nagi.

The third extension order was signed on April 5, 2006 by Judge Hood. It dropped

3

telephone number 313.995.2251, subscribed to and used by Aref Nagi.

### C. Investigation Techniques and Results

Numerous violation calls were also monitored on these phones. In addition, search warrants were executed, arrests were made, and new informants were developed. As a result, numerous Highwaymen members and associates were subsequently indicted.

Defendant Gebara's calls were intercepted, and the government anticipates that it will introduce these calls into evidence at trial.

## II. Analysis

Defendant Gebara's principal argument is that the government failed to establish a "need" or "necessity" for the wiretaps. Specifically, Defendant alleges that the affidavits submitted in support of the initial October 7, 2005 Order and all extensions failed to establish any particular difficulties posed by this particular investigation. Defendant further argues that no further orders or extensions were necessary because exceedingly large amounts of evidence had already been produced. The government responds that Defendant fails to cite well-established Sixth Circuit law addressing § 2518(c)(1) and mischaracterizes the relevant statutory standard. It further responds that each wiretap affidavit satisfied the relevant statutory requirements. This Court agrees that the challenged wiretap affidavits satisfy the relevant statutory requirements.

### A. Legal Principles - Electronic Surveillance

"Title III of the Omnibus Crime Control and Safe Streets Act of 1968 requires that applications for electronic surveillance include 'a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably

4

appear to be unlikely to succeed if tried or to be too dangerous.'" *United States v. Corrado*, 227 F.3d 528, 539 (6th Cir. 2000) (quoting 18 U.S.C. § 2518(c)(1)). As the government properly points out, § 2518(1)(c) is structured in the disjunctive. Defendant's arguments miss this point.

As the Sixth Circuit observed in *Corrado*, the purpose of the requirement in § 2518(c)(1) "'is not to foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted, but simply to inform the issuing judge of the difficulties involved in the use of conventional techniques.'" *Id.* (quoting *United States v. Landmesser*, 553 F.2d 17, 20 (6th Cir. 1977)). "'All that is required is that the investigators give serious consideration to the non-wiretap techniques prior to applying for wiretap authority and that the court be informed of the reasons for the investigators' belief that such non-wiretap techniques have been or will likely be inadequate.'" *United States v. Alfano*, 838 F.2d 158, 163-64 (6th Cir. 1988) (quoting *United States v. Lambert*, 771 F.2d 83, 91 (6th Cir. 1985)). "[T]he standards contained in the Act do not require proof of the absolute impossibility of all other means. Instead, a reasonable statement of the consideration or use of other investigative means is adequate. . . ." *Alfano*, 838 F.2d at 164. Here, as in *Corrado* and *Alfano*, the affidavits tendered by the government in support of the subject Title III applications are adequate because they include detailed descriptions of the evidence previously obtained as well as a separate section detailing the aims of and need for continued surveillance.

### B. Initial October 7, 2005 Wiretap Order

Special Agent Edward Brzezinski's affidavit submitted in support of the initial October 7, 2005 wiretap order describes in great detail why a wiretap is needed, what other non-

wiretap techniques were tried, and why these other investigative techniques had been or were likely to be inadequate. For example, confidential informants had been used but proved to be inadequate because they failed to reveal the full scope of the illegal drug trafficking conspiracy and were reluctant to testify out of fear for their lives or that of their families. (Def.'s Ex. 1, Brzezinski 10/7/05 Aff. at pp. 38-40.) In support of this latter point, Agent Brzezinski describes an incident where one of the informants saw Aref Nagi and Johnny Jarrell with blood on their hands and clothes after they allegedly beat someone who was causing them problems. (*Id.* at 39, n.23.)

Pen registers, trap and trace devices, toll analysis, and subscriber information were also used as investigative tools. These techniques provided limited success. They revealed which subjects used certain phone numbers but failed to provide the content of or participants in conversations concerning drug transactions. (*Id.* at 43-44.)

Physical surveillance was also conducted but proved to be of limited success as several of the subjects, e.g., Nagi, Ball, and Philip McDonald, applied counter-surveillance practices, including surveillance-evading driving techniques and CCTV monitoring. (*Id.* at 44-46.) Use of undercover agents was considered and rejected as too dangerous or unlikely to produce results because the targets dealt principally with other Highwaymen members. (*Id.* at 40-41.)

Search warrants were also considered and rejected as premature because, at the time the affidavit was prepared, there was insufficient information to establish probable cause to search a specific location. Search warrants were also rejected as inadequate because the search of a limited number of locations was unlikely to reveal all the participants and their respective roles in the drug conspiracy being investigated. (*Id.* at 46-48.) Trash pulls

6

were rejected as too dangerous in light of the public nature of the target's home and too limited because they did not allow agents to identify co-conspirators. (*Id.* at 47-48.) Finally, interviews of targets and their associates, grand jury testimony, and immunity grants were also rejected as futile in light of Agent Brzezinski's unsuccessful attempts to obtain information from Defendant Nagi and two other individuals associated with Nagi who were arrested and refused to disclose any information. (*Id.* at 41-43.)

Special Agent Brzezinski's affidavit reveals that serious consideration was given to non-wiretap techniques before applying for the wiretap. Moreover, his affidavit sets forth in great detail "the reasons for [his] belief that such non-wiretap techniques have been or will likely be inadequate." *Alfano*, 838 F.2d at 163-64.

### C. Extensions of Initial Wiretap Order

Agent Brzezinski's affidavits submitted in support of the December 8, 2006; March 2, 2006; and April 5, 2006 "extension" Orders are similarly detailed. (Def.'s Ex. 2, Brzezinski 12/8/06 Aff. at pp. 42-54; Ex. 3, Brzezinski 3/2/06 Aff. at pp 35-49; and Ex. 4, Brzezinski 4/5/06 Aff. at pp. 36-52.) An application for an extension of a wiretap order requires "a statement setting forth the results thus far obtained from the interception, or a reasonable explanation of the failure to obtain such results." 18 U.S.C. § 2518(1)(f). Special Agent Brzezinski's affidavits satisfy this requirement. Each "extension" affidavit detailed new incidents that had occurred or new suspects who had been identified by investigative techniques, explained why non-wiretap techniques were still inadequate, and why there was a continuing need for electronic surveillance. (*See* Def.'s Ex. 2, Brzezinski Aff. at pp. 42-54; Ex. 3, Brzezinski Aff. at pp 35-49; and Ex. 4, Brzezinski Aff. at pp. 36-52.) Each period of interception revealed new participants, telephone lines, offenses, and criminal

activities of members of the Highwaymen.  These new revelations were included in each subsequent affidavit, along with reasons why the full extent of the criminal activity had not yet been fully developed, and why there was a continuing need for wiretap surveillance.

Contrary to Defendant Gebara's arguments here, a showing that some of the agent's non-wiretap activities proved fruitful illustrates that serious consideration was given to those non-wiretap techniques.  As observed by the Sixth Circuit, "the mere fact that some investigative techniques were successful in uncovering evidence of wrongdoing does not mandate that a court negate the need for wiretap surveillance." *United States v. Stewart*, 306 F.3d 295, 305 (6th Cir. 2002).  Here, as in *Stewart*, "it does not appear that the government could have uncovered the full scope of the conspiracy, especially not in a relatively safe manner, without the wiretaps." *Id.* at 306.  Here, at the time each of the Brzezinski affidavits was prepared, the investigation had progressed to the point where some individual Defendants could be identified, but further investigation was required to uncover the full scope of the criminal organization and its activities.  As detailed by Agent Brzezinski, non-wiretap techniques had been employed but could not expose the full extent of the criminal conspiracy in a relatively safe manner.  Defendant Gebara, like the defendants in *Stewart*, has "provided no evidence to contest the government's contention that traditional methods would have been dangerous." *Id.*  Moreover, despite Defendant Gebara's arguments to the contrary, Agent Brzezinski's affidavits provided sufficient information to show there was a continuing need for electronic surveillance; i.e., intercepts had revealed some leads but had not yet revealed where Defendant Nagi stored illegal narcotics, the identity of his couriers and suppliers, or descriptions of the routes and methods he used to transport drugs identified in wiretapped conversations, including

8

marijuana, cocaine, and Vicoden pills.  (Brzezinski 12/8/05 Aff. at 54-56; Brzezinski 3/2/06 Aff. at 49-51; Brzezinski 4/5/06 Aff. at 50-52.)

### III.  Conclusion

Defendant Gebara's motion to suppress is DENIED.  Agent Brzezinski's affidavits revealed that "serious consideration" was given to non-wiretap techniques.  Each affidavit detailed the reasons why those non-wiretap techniques were inadequate, detailed where the investigation stood at the time each affidavit was prepared, and detailed why the government reasonably believed that the requested wiretaps were necessary to accomplish the identified objectives.  No more is required under the statute or prevailing Sixth Circuit law.

        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated:  February 25, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 25, 2010, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager